FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★    OCT 31 2024    ★

LONG ISLAND OFFICE

RECEIVED

NOV  4 2024

EDNY PRO SE OFFICE

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------x

JAMES KIM

          PLAINTIFF.

          v.

ROBERT FISENNE and RRF DESIGN, LLC.
(D.B.A. INCORPORATED VILLAGE OF FREEPORT
DEPARTMENT OF BUILDINGS)

          DEFENDANTS.

-------------------------------------------------------------------------x

**CIVIL COMPLAINT**

Case No. _____

Dated October 31, 2024

The Plaintiff *pro se* JAMES KIM (the "KIM Plaintiff"), upon information and belief, attests as follows:

## PARTIES

1.     Plaintiff JAMES KIM is a natural person and the legal owner of the property located at 22 Gordon Place, Freeport, New York 11520.

2.     Defendant ROBERT FISENNE (the "FISENNE Defendant") is the Superintendent of Public Works with direct oversight and public authority over the INCORPORATED VILLAGE OF FREEPORT: DEPARTMENT OF BUILDINGS ("Freeport Department of Buildings"), a division of a public benefit corporation created and organized pursuant to and in accordance with the laws of the State of New York, maintaining offices at 46 Ocean Avenue, Freeport, New York 11520.

3.     Defendant RRF DESIGN, LLC (the "RRF Defendant") is wholly owned and operated by the FISENNE Defendant, registered with a New York State Department of State Case ID of 498275 and a date of incorporation of July 25, 2016, and maintains its office at 88 Irving Place, Freeport, New York 11520.

## COMMON FACTUAL ALLEGATIONS

4.    The KIM Plaintiff is the legal owner of the property and domicile located at 22 Gordon Place, Freeport, New York, 11520 (the "KIM Property"), closed and purchased on or about August 2, 2021.

5.    The KIM Property, at the time of purchase, had an eroded curb and partition between the curb and sidewalk, similar to multiple other residences along the dead end section of Gordon Place where the KIM Property is located.

6.    On or about August 22, 2022, the curb and partition was rebuilt by the KIM Plaintiff at his own expense along the Property survey lines with Freeport Building Permit No. 172-2022 and in accordance with the Village of Freeport Ordinance §180-2 *Maintenance of sidewalks and curbs* A. "It shall be the duty of every property owner and occupant to keep the sidewalk and curb in safe, passable condition."

7.    On or about January 19, 2023, the FISENNE Defendant, as the chief public authority of the Freeport Department of Buildings, sent an initial order to have the curb and partition removed and demolished, misleadingly citing Freeport Ordinance §180-2 *Maintenance of sidewalks and curbs* as being a "New York State law" and pursuant to subsection B "The Board of Trustees may construct, build, flag, surface, resurface, alter, repair, grade, regrade, maintain, care for and clean sidewalks, curbs and gutters in public streets."

8.    In reference to the above cited Village of Freeport Ordinance, the FISENNE Defendant is not a member of the Freeport Board of Trustees (publically listed as Mr. Jorge A. Martinez, Mr. Christopher L. Squeri, Ms. Evette B. Sanchez, and Mr. Ronald J. Ellerbe).

9.    The KIM Plaintiff showed Permit No. 172-2022 to the Freeport Department of Buildings and Village clerks on or about January 23, 2023 to contest the order along with a copy of the land survey and demonstrated that the majority of properties adjacent to the KIM Property did not have a standing curb as well, which is a key part of the roadway infrastructure. The clerks stated they would relay the KIM Plaintiff's counterarguments to the superintendent (the FISENNE Defendant), and the KIM Plaintiff considered the matter resolved at the time.

10.    As the Village of Freeport Superintendent of Public Works, the FISENNE Defendant has a lengthy legal history of putting self-serving interests over the Village of Freeport's public interests, as documented by numerous filings against the Village: *Fisenne v.*

*Freeport, Village et al.* (2015) Nassau County Supreme Court, NYSCEF Index No. ER15700205; *Fisenne v. Freeport, Village of et al.* (2016) Nassau County Supreme Court, NYSCEF Index No. ER16700233; *Fisenne v. County, Nassau et al.* (2020) Nassau County Supreme Court, NYSCEF Index No. ER20761843; *Fisenne v. Freeport, Village et al.* (2024) Nassau County Supreme Court, NYSCEF Index No. ER24700533).

11.    On or about January 21, 2021, as a matter of public record (https://www.liherald.com/stories/village-board-approves-2021-22-budget,129725, accessed October 28, 2024), the FISENNE Defendant received $24.6 million in taxpayer monies to manage as the Superintendent of Public Works under the guise of "public safety" and to replace building inspectors post-COVID regulations.

12.    Rather than use those allocated funds to hire qualified building inspectors and rebuild the eroded curbs and abutting partitions along Gordon Place, the FISENNE Defendant funneled these funds into the RRF Defendant and used unlicensed employees of the RRF Defendant to pose as building inspectors in order to issue violations under bare legal conclusions to Village of Freeport ordinances in order to enrich the RRF Defendant doing business as the Freeport Department of Buildings and refer business to various subcontractors to amend these violations.

13.    Therefore, the RRF Defendant and FISENNE Defendant inevitably resumed taking action pursuant their own bare legal conclusions of the cited Village Ordinances in order to extort violation monies from the KIM Plaintiff now using direct intimidation and personal harassment. On or about November 25, 2023 (Thanksgiving Weekend) and December 31, 2023 (New Year's Eve), the KIM Plaintiff was accosted by a male employee of the RRF Defendant on the KIM Property on the roadway in front of the KIM Property, simply identifying himself as "from the Village" and refusing to give any other identifying information. He made the same authoritarian demands to have the KIM Plaintiff remove the curb on his own as the January 23, 2023 notice, citing "public safety" and vague "complaints". Both times, he was told to rebuild the other curbs on Gordon Place before pursuing action against the KIM Plaintiff for a piece of infrastructure that should have been existent in the first place and was set along the surveyed property lines, and the timing of his visits superseded Village Ordinance §106-4 *Powers of Superintendent* A(1) "to inspect any building **at a reasonable hour**". Rather, the intention of

these visits outside the normal operating hours of any public official was interpreted by the KIM Plaintiff as direct harassment by the RRF Defendant as the Freeport Department of Buildings.

14.     On or about April 8, 2024, the KIM Plaintiff received another written notice stating a work order had been issued to the "Village Contractor" to make "necessary repairs", and that the KIM Plaintiff would be "billed for the work".

15.     This order was immediately contested by the KIM Plaintiff on or about April 12, 2024 with the Village of Freeport clerks, who referred the KIM Plaintiff to the FISENNE Defendant, citing his phone number of (516) 377-2289. When the KIM Plaintiff explained to the FISENNE Defendant the reasons why his work order needed to be contested legally in a court of law before being executed, he immediately terminated the phone conversation, which was continued by electronic mail to rfisenne@freeportny.gov whereby he continued to insist his work order was legal pursuant to Village Ordinance §180-2 to which the KIM Plaintiff replied, as per subsection B, that he was required to show proof of the order coming from the Village of Freeport Board of Trustees, as the sole public authority to enforce §180-2. When the FISENNE Defendant realized this was becoming a legal interpretation matter, he ended all responsive communiques with the KIM Plaintiff after referring him to the Freeport Village attorney, Mr. Robert McLaughlin.

16.     On or about April 28, 2024 (a Sunday) at 2:03PM, the RRF Defendant employee "Chris" again intruded on the KIM Property by knocking loudly on the door and, once answered, made the same aggressive demands to have the KIM Plaintiff remove the curb and partition. However, this exchange was immediately video recorded and proof of identification was demanded, which "Chris" refused to show on camera. When he was asked why he was harassing the KIM Plaintiff on a Sunday over the curb issue, he became belligerent and more aggressive with his demands while solely citing "complaints" as the reason. At this point, the KIM Plaintiff had enough of his continuous demands and instructed "Chris" to leave the KIM Property if he was not going to show identification on camera. "Chris" falsely claimed the KIM Plaintiff had "spit" on him, despite not being shown on camera, and he was subsequently told he was flagrantly lying about that allegation along with his nebulous reasons for his order.

17.     After witnessing this public display of harassment by the RRF Defendant doing business as the Freeport Department of Buildings, other Gordon Place neighbors of the KIM Plaintiff began approaching him with similar allegations, and the fact that all the neighbors who

were being issued wanton "violations" by "Chris" were of minority ethnicities was noted by the KIM Plaintiff.

18.    The KIM Plaintiff decided the following day, April 29, 2024, to contact Mr. Robert McLaughlin, the Freeport Village Attorney, by phone at (516) 377-2247 on or about 9:19 AM. During that conversation, the KIM Plaintiff attempted to reason with Mr. McLaughlin and complain about the RRF Defendant's conduct and municipal overreach by citing that the curb was built along the KIM Property survey lines and that a permit had been issued for its construction, as a necessary component of the Village of Freeport's infrastructure. Mr. McLaughlin verbally stated he did "not care about the [KIM Plaintiff's] Property lines" and that he "welcomed a legal challenge in court". Thereafter, Mr. McLaughlin instructed the KIM Plaintiff to send him a facsimile of the permit and property lines via electronic mail at rmclaughlin@freeportny.gov and terminated the conversation, which the KIM Plaintiff replied to stating this request was not taken in good faith owing to the fact that he may become opposing counsel in any future litigation and would not alter the FISENNE and RRF Defendants' extra-judicial decision to pursue demolition of the curb and abutting partition.

19.    Consistent with the pattern of responses from the Defendants, the RRF Defendant, as the Freeport Department of Buildings, issued another written notice alleging a new series of "violations" to Village of Freeport Ordinances from "Chris" on or about April 30, 2024, citing §86-7 A (1) *Construction without a Permit*, §123-23 D *Dangerous Condition: Trip Hazard*, and §180-40 *Permit for Planting between Curb and Property Lines*. This notice's letterhead was noted by the KIM Plaintiff to be different than other issuances, wherefore the Freeport Village Clerk, Ms. Pamela Boening, was named on previous notices, her name was replaced by another employee of the RRF Defendant, Mr. Sergio Mauras, and falsely titled "Superintendent of Buildings" when that position was clearly known to belong to the FISENNE Defendant.

20.    The KIM Plaintiff responded to the above referenced notice on or about May 3, 2024 with a Cease and Desist Notification stating and intention to bring a lawsuit should any attempts to enforce these violations be executed, sent both via electronic mail to rfisenne@freeportny.gov and rmclaughlin@freeportny.gov and via facsimile to the (516) 377-2493 number listed on the notice. In this Notification, the KIM Plaintiff alleged the following: that "harassing a homeowner over not having a non-existent permit to rebuild a municipal curb is not within his [the FISENNE Defendant] duties listed in Village Ordinance §86-10 (A). For [the

FISENNE Defendant] to claim anything about a curb being present is 'illegal' or a 'dangerous condition' is preposterous, as it should have been rebuilt in the first place by the Freeport Building Department [the RRF Defendant], so instead Mr. Kim [the KIM Plaintiff] merely took it upon himself to adhere to the maintenance of the curb on his property [the KIM Property]. By specifically ordering the homeowner [the KIM Plaintiff] to remove the curb without a counteroffer to rebuild the curb by Mr. Fisenne [the FISENNE Defendant], as evidenced in the contradictory second letter on April 30, 2024, he [the FISENNE Defendant] is overreaching his authority and disregarding his municipal duty to rebuild all the other eroded curbs and berms (sic) on Gordon Place by deciding the only rebuilt curb on this particular cul-de-sac (sic) solely because Mr. Kim [the KIM Plaintiff] followed his land survey designations. And, by pursuing this overreach of his authority, Mr. Fisenne [the FISENNE Defendant] is also disregarding Permit #172-2022 obtained on August 22, 2022 by Mr. Kim [the KIM Plaintiff] which allowed for the rebuilding of the curb infrastructure." And that "to give further evidence that these letters are legal harassment, the cited Village [of Freeport] Ordinance §123-23 (D) regarding 'Dangerous Conditions' **DOES NOT EXIST**." And that "Village [of Freeport] Ordinance §180-40 regarding 'Permit for Planting between curb and Property Lines' specifies trees and 'shrubs', which are both categorically referred to as "bushes" by Mr. Fisenne's [the FISENNE Defendant] proxy Sergio Mauras in the April 30, 2024 letter. As an avid gardener, Mr. Kim [the KIM Plaintiff] would contest that the ornamental kale and even the roses planted into the sidewalk verge (sic) between the curb and sidewalk fit into neither the tree nor "shrub" category specified in that Ordinance which would require a permit, as the botany 'inspector' pointed out in their own words by referring to them all as 'bushes'." And that "with this cease and desist letter, Mr. Fisenne [the FISENNE Defendant] is considered by Mr. Kim [the KIM Plaintiff] to be operating in bad faith using his position of [municipal] authority. Therefore, any imposed fines, continued Sunday and holiday harassment by any Inspectors sent by Mr. Fisenne [the FISENNE Defendant], and/or fees from work orders imposed without any mutually signed agreements between Mr. Kim [the KIM Plaintiff] and the Village of Freeport's Department of Buildings [the RRF Defendant] regarding his rebuilding of Freeport's infrastructure at his expense, will be tallied together and documented, as they have been to this point, in legal action to recoup these losses should Mr. Fisenne [the FISENNE Defendant] proceed in using his flawed interpretations of his own ordinances, overreach of his municipal authority, and inability to perform his

municipal duty of rebuilding all the curbs on Gordon Place rather than his petty insistence on imposing the demolition of Mr. Kim's [the KIM Plaintiff] rebuilt curb and adjacent lawn."

21.    Consistent with the aspiring despotic nature of the FISENNE Defendant and the RRF Defendant when their public authority is challenged, the above referenced Cease and Desist Notification was promptly disregarded and ignored with another notice of an alleged violation dated on or about June 24, 2024. The letterhead and Village of Freeport logo diverged markedly from the previous notices, appearing to be an altered digital image accompanied with a different font. Additionally, in apparent acknowledgement of the factual inconsistencies in citing the previous violations, this notice cited a different violation pursuant to Village of Freeport Ordinance §120-1 *Accumulation of Rubbish; growth of weeds; abandoned vehicles; vacant properties* A *It shall be unlawful…* (1) *Uncut grass, weeds, brush or any portion of said growth to obtain a height of eight inches.*

22.    In response to the above June 24, 2024 notice, the KIM Plaintiff sent an electronic mail communique on or about June 28, 2024 to the FISENNE Defendant, the RRF Defendant (as the Freeport Department of Buildings), and Mr. McLaughlin with photographs of the KIM Property documenting no accumulation of rubbish on the property and no grass or weeds obtaining a height of eight inches, with his interpretation of "brush" as referring to "bushes, shrubs, and trees such as growing wild and without care" "and pertains more to woody cuttings and other nuisance cuttings that may harbor pests". Additionally, as evidence of the harassing nature of this and all the above referenced notices from the RRF and FISENNE Defendants, the handwritten phone number of (516) 377-2274 on the June, 24, 2024 notice was dialed on or about 9:01 AM on June 28, 2024 with no response and appeared to be a deliberately erroneous variant of Mr. McLaughlin's phone number of (516) 377-2247, thereby depriving the KIM Plaintiff of due process and airing of grievances and causing the KIM Plaintiff to again state that a lawsuit will be filed should the Defendants pursue any action pursuant to their supposed infractions of Village of Freeport Ordinance.

23.    Unable to misconstrue any new Village of Freeport Ordinances into a violation, the FISENNE Defendant sent a "Final Notice" pursuant to §120-1 A(1) under the same altered Village of Freeport logo and letterhead on or about July 10, 2024. A new inspector (employee of the RRF Defendant) was referenced, Ms. Stephanie Londonio, and the same erroneous (516)

377-2274 phone number was handwritten as her contact information along with her electronic mailing address, slondonio@freeportny.gov .

24.     The KIM Plaintiff sent a responsive electronic mail to the July 10, 2024 notice from the Defendants on or about July 12, 2024 alleging Ms. Stephanie Londonio is not a publicly listed building inspector for the Village of Freeport. A delve into her personal background showed she did not possess any education beyond a high school diploma, and her phone number was listed as (516) 356-7058 rather than the provided (516) 377-2274 number. Furthermore, she appeared to have a relative, Christopher Londonio, who is currently serving two life sentences for charges including racketeering, murder, and various other crimes related to his participation in the Lucchese Family of La Cosa Nostra (*United States of America v. Londonio*, 20-2479-cr (L), 2d Cir. Aug. 13, 2024), and this connection appeared to be her sole qualification for the FISENNE Defendant hiring her as an unlicensed "building inspector" of the RRF Defendant. In addition, the KIM Plaintiff pointed out in this responsive communique that, based on the harassing and deliberately intimidating conduct of the various employees associated with the RRF Defendant and this Lucchese Family connection, these violations issued were likely part of a racketeering and extortion operation by the RRF Defendant, posing as a public authority.

25.     The RRF Defendant, unable to refute the KIM Plaintiff's claims, sent a duplicate of the July 10, 2024 correspondence on or about July 22, 2024 sans the handwritten contact information for Ms. Stephanie Londonio.

26.     In a "Final Notice" responsive electronic mail, the KIM Plaintiff relayed to the FISENNE and RRF Defendants that, since they appeared to be undertaking all their actions in bad faith as individuals with La Cosa Nostra connections, all future correspondences would be disregarded and any tortious actions pursuant to their various misinterpreted Village of Freeport Ordinances would result in a complaint filed with the United States District Court for the Eastern District of New York pursuant first and foremost to the 1970 Racketeer Influenced and Corrupt Organizations (RICO) Act, statute 18 U.S.C. §1961.

27.     Although the written notices from the RRF Defendant ceased after this exchange, on or about October 28, 2024 at 10:12 AM, the KIM Plaintiff witnessed an excavator demolishing one side of the KIM Property curb. The KIM Plaintiff began video recording a verbal exchange between him and the operator of the excavator (likely a contractor with the RRF Defendant), who claimed his name was "Anthony". When questioned further under whose

authority this demolition was commencing, he replied "Anthony D'Esposito", the United States House of Representatives Congressman for New York District 04 which includes the Village of Freeport. This claim was immediately doubted by the KIM Plaintiff, and the excavator operator's supervisor was called to respond to the KIM Plaintiff's further inquiries as to who issued this work order. The supervisor introduced himself as "Raymond", and the KIM Plaintiff had a relatively tranquil verbal exchange with him after photographing him, whereby "Raymond" assured the KIM Plaintiff that a copy of the work order and proof of whose authority this demolition was commenced under would be provided. The KIM Plaintiff, "Anthony", and "Raymond" mutually agreed to cease any further demolition of the remainder of the KIM Property curb until this work order could be produced, but after departing, the KIM Plaintiff did not receive any documentable evidence of the work order.

28.     When the KIM Plaintiff returned to the Property from work on the following day, October 29, 2024 on or about 6:00 PM, the entire curb on the KIM Property had been demolished with the fragmented debris deposited directly onto the lawn, consistent with the unilateral and deliberate nature of the bad faith undertakings of the Defendants.

29.     Wherefore even if the debris were carted away at a later date, the materials were inherently part of the KIM Property and the act of removal amounts to theft of property.

## AS AND FOR A FIRST CAUSE OF ACTION: RACKETEERING BY ALL DEFENDANTS

30.     The KIM Plaintiff *pro se* repeats and re-alleges the preceding paragraphs of this Complaint as if the same were set forth at length herein.

31.     The FISENNE and the RRF Defendants were at all relevant times aware of the curb and abutting partition being part of the KIM Property and its surveyed lines.

32.     The Defendants at all times intended to use their public authority to deliberately extort monies and impose their supposed jurisdiction over the KIM Property in a harassing and extortive manner.

33.     The Defendants have connections to the Lucchese Crime Family of La Cosa Nostra and acted in a manner consistent with an extortion racket, enriching the Defendants for

personal financial gain and using vexatious targeting of the KIM Plaintiff's Property as an individual rather than in the interests of the public.

34.    By virtue of association, the KIM Plaintiff brings this first cause of action against the Defendants pursuant to 18 U.S.C. §1961 which targets organized crime and white-collar crimes, particularly of government officials.

35.    Therefore, the KIM Plaintiff became entitled to monetary damages in favor of the Plaintiff and against the Defendants in excess of the jurisdictional limits of the lower and local New York State Courts that would otherwise have jurisdiction in this state, and by reason of the foregoing, the KIM Plaintiff has suffered damages in an amount to be determined at trial.

## AS AND FOR A SECOND CAUSE OF ACTION: CONFLICTS OF INTEREST BY ALL DEFENDANTS

36.    The KIM Plaintiff *pro se* repeats and re-alleges the preceding paragraphs of this Complaint as if the same were set forth at length herein.

37.    The Defendants' conduct and undisclosed personal limited liability company (the RRF Defendant) amounts to a significant violation of conflict of interest laws pertaining to public officials.

38.    The Plaintiff brings this second cause of action against the Defendants pursuant to the New York Public Officers Law §74 and General Municipal Law §801 which forbid the Defendants from having any interest, financial or otherwise, that is in conflict with the proper discharge of their duties.

39.    Therefore, the KIM Plaintiff became entitled to monetary damages in favor of the Plaintiff and against the Defendants in excess of the jurisdictional limits of the lower and local New York State Courts that would otherwise have jurisdiction in this state, and by reason of the foregoing, the KIM Plaintiff has suffered damages in an amount to be determined at trial.

## AS AND FOR A THIRD CAUSE OF ACTION: ABUSE OF THE PLAINTIFF'S DUE PROCESS RIGHTS BY ALL DEFENDANTS

40.     The KIM Plaintiff *pro se* repeats and re-alleges the preceding paragraphs of this Complaint as if the same were set forth at length herein.

41.     By demolishing the KIM Plaintiff's Property unilaterally as a public official with the authority of a public corporation and without a hearing in a court of law, the Defendants thereby infringed on the Plaintiff's intrinsic and constitutional rights to due process set forth in the Fifth and Fourteenth Amendments to the United States Constitution, particularly the Takings Clause in the Fifth Amendment, and the Civil Rights Act 42 U.S.C. §1983 which allows individuals to sue for damages when they have been deprived of their constitutional rights under color of state law, giving cause for this third cause of action.

42.     Therefore, the KIM Plaintiff became entitled to monetary damages in favor of the Plaintiff and against the Defendants in excess of the jurisdictional limits of the lower and local New York State Courts that would otherwise have jurisdiction in this state, and by reason of the foregoing, the KIM Plaintiff has suffered damages in an amount to be determined at trial.

## AS AND FOR A FOURTH CAUSE OF ACTION: DISCRIMINATION BY ALL DEFENDANTS

43.     The KIM Plaintiff *pro se* repeats and re-alleges the preceding paragraphs of this Complaint as if the same were set forth at length herein.

44.     The Defendants specifically targeted the KIM Plaintiff as being of a minority ethnicity, as demonstrated further by similar harassment of his fellow ethnic minority neighbors by employees of the RRF Defendant (Affidavits in Support of the Complaint to be provided during discovery).

45.     The KIM Plaintiff thus brings this fourth cause of action pursuant to the Defendants' grave violations of the Civil Rights Act of 1964 (Title VI), 42 U.S.C. §1981, the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, and the Fair Housing Act (42 U.S.C. §3601 et seq.).

46.     Therefore, the KIM Plaintiff became entitled to monetary damages in favor of the Plaintiff and against the Defendants in excess of the jurisdictional limits of the lower and local New York State Courts that would otherwise have jurisdiction in this state, and by reason of the foregoing, the KIM Plaintiff has suffered damages in an amount to be determined at trial.

## AS AND FOR A FIFTH CAUSE OF ACTION FOR INJUNCTIVE RELIEF BY ALL DEFENDANTS

47.     The KIM Plaintiff *pro se* repeats and re-alleges the preceding paragraphs of this Complaint as if the same were set forth at length herein.

48.     Defendants have no right to engage in the wrongful conduct described herein including the willful demolition of the KIM Property's curb, behaving in a threatening and harassing manner towards the Plaintiff, abusing process, and tampering and causing damage to the property.

49.     Therefore, the KIM Plaintiff seeks a permanent injunction enjoining said Defendants from engaging in the aforementioned conduct and further, ordering the reconstruction of the KIM Plaintiff's curb and partition to their original state along surveyed lines at cost to the Defendants.

50.     The Plaintiff has no adequate remedy at law.

**WHEREFORE** the KIM Plaintiff *pro se* demands judgement against the Defendants as follow:

i)      On the FIRST CAUSE OF ACTION, the Plaintiff is entitled to damages in an amount not less than $250,000 plus costs, disbursements, and fees, holding the Defendants jointly and severally liable, together with;

ii)     On the SECOND CAUSE OF ACTION, the Plaintiff is entitled to damages in an amount not less than $250,000 plus costs, disbursements, and fees, holding the Defendants jointly and severally liable, together with;

iii)    On the THIRD CAUSE OF ACTION, the Plaintiff is entitled to damages in an amount not less than $250,000 plus costs, disbursements, and fees, holding the Defendants jointly and severally liable, together with;

iv)     On the FOURTH CAUSE OF ACTION, the Plaintiff is entitled to damages in an amount not less than $250,000 plus costs, disbursements, and fees, holding the Defendants jointly and severally liable, together with;

v)      such other and further relief in favor of the KIM Plaintiff *pro se* as this Court may deem just and proper.

The KIM Plaintiff *pro se* attests the preceding paragraphs of this Complaint to be factual and true to the best of his knowledge, under penalty of perjury.

Dated: October 31, 2024

       Freeport, New York

**James Kim**

Plaintiff *pro se*

Owner of 22 Gordon Place, Freeport, New York, 11520

Phone: (917) 683-8997

Jameskim1984@gmail.com

10-31-2024

MOSES GANTZ
Notary Public, State of New York
No. 01GA6320998
Qualified in Kings County
Commission Expires March 16, 2027